**In re MILLER MINING, INC., Debtor.**

**Robert L. COHEN, Trustee, Plaintiff,**

**v.**

**KDC FINANCIAL SERVICES, INC., Defendant.**

**Bankruptcy No. 97–61705.**
**Adversary No. 97–6160.**

United States Bankruptcy Court,
N.D. Ohio.

March 25, 1998.

Michael D. Zaverton, Benesch, Friedlander, Coplan & Aronoff, L.L.P., Cleveland, OH.

Dennis C. Rathburn, Rathburn & Associates, Columbus, OH.

Jean Robertson, Hahn, Loeser & Parks, L.L.P., Cleveland, OH.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is the motion for summary judgment filed by the Plaintiff, Robert L. Cohen, the Chapter 11 Trustee (Trustee) of Miller Mining, Inc. (Debtor), in his action to recover, pursuant to 11 U.S.C. § 549, an alleged unauthorized postpetition payment of $17,753.67 to the Defendant, KDC Financial Services, Inc. (KDC). KDC has filed a memorandum in opposition to the trustee's motion and the Trustee has responded. The Court comes now to render its decision on the motion.

### FACTS

The Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code on June 4, 1997. On July 23, 1997, the Court directed the appointment of a Trustee to oversee the Debtor's bankruptcy estate and operate the Debtor's business. On August 5, 1997, Robert L. Cohen was confirmed by this Court as Trustee for the Debtor.

On October 23, 1996, the Debtor had entered into a security agreement-conditional sales contract with Columbus Equipment Co. for a Komatsu Dozer. This contract was subsequently assigned to KDC. On June 25, 1997, the Debtor made a postpetition payment to KDC in the amount of $17,753.67. Both parties stipulate that the payment was not made pursuant to an order of this Court.

On August 1, 1997, the Debtor commenced this adversary proceeding by filing a complaint seeking to have KDC return this postpetition payment to the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 542. The complaint was later amended by the Trustee on October 28, 1997, to assert a claim under 11 U.S.C. § 549. On November 17, 1997, KDC filed its answer admitting that the pay-

ment by the Debtor was made postpetition and was not authorized by court order. KDC, however, alleges that the payment is exempt from avoidance as a payment made in the ordinary course of the Debtor's business pursuant to 11 U.S.C. § 1108 and § 363(c)(1) KDC also alleges that the payment by the Debtor was, in fact, an adequate protection payment to reimburse it for the depreciation of the collateral which was being used by the Debtor in its postpetition operations.

The Trustee has filed a motion for summary judgment asserting that there are no genuine issues of material fact. KDC responds to the contrary.

### DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of Section 1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Section 157(b)(2)(A) and (O) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Standards on summary judgment under Rule 56 of the Federal Rules of Civil Procedure are made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56(c) provides for a grant of summary judgment as follows:

. . .

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The ultimate burden of demonstrating the existence of a genuine issue of material fact, however, lies with the nonmoving party. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. *See also, First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" F.R.Civ.Proc. 56(e) (emphasis added).... where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial.".

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations and footnotes omitted).

### The Elements of 11 U.S.C. § 549

The Trustee seeks to recover the unauthorized postpetition transfer of property of the Debtor's bankruptcy estate in the amount of $17,753.67 to KDC pursuant to 11 U.S.C. § 549 which reads, in pertinent part:

> Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> > (1) made after the commencement of the case; and
> >
> > (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> >
> > (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

The Trustee must therefore prove four elements to avoid a transfer of property from the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 549. First, the unauthorized transfer must occur after the commencement of the case. Second, property of the bankruptcy estate must be involved.

Third, the Trustee must show that the Debtor transferred the property. Fourth, the transfer must not be authorized by the court or the Bankruptcy Code. *Gibson v. United States (In re Russell),* 927 F.2d 413, 417–18 (8th Cir.1991). If the transfer is avoidable under 11 U.S.C. § 549, the Trustee can recover for the estate the property transferred or the value of such property from the initial transferee or the entity for whose benefit the transfer was made. 11 U.S.C. § 550(a).

KDC has admitted that it received the $17,753.67 payment from the Debtor after the commencement of the case and has admitted that neither 11 U.S.C. § 303(f) or § 542(c) are applicable to this proceeding. *See* KDC Answer ¶ 6, ¶ 9. Furthermore, it is undisputed that the $17,753.67 payment was made from the Debtor's bankruptcy estate through a check written on the Debtor's checking account. Lastly, KDC admits the transfer was made without court authorization. *See* KDC Answer ¶ 9. Thus, the only issue in dispute is whether the payment was authorized by a provision under the Bankruptcy Code.

### The Elements of 11 U.S.C. § 363(c)(1)

■ KDC asserts that the postpetition transfer is exempt from 11 U.S.C. § 549 because it was made by the Debtor in the ordinary course of its business pursuant to 11 U.S.C. § 1108[1] and § 363(c)(1). Section 363(c)(1) provides that:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). "The purpose behind the ordinary course of business rule outlined in 11 U.S.C. § 363(c)(1) is to allow a business to continue its daily operations without incurring the burden of obtaining court approval or notifying creditors for **minor transactions**, while at the same time protecting secured creditors and others from the dissipation of estate assets." *Lopa v. Selgar Realty Corporation (In re Selgar Realty Corporation),* 85 B.R. 235, 240 (Bankr.E.D.N.Y.1988)(emphasis added).

■ Because the term "ordinary course of business" is not defined in the Bankruptcy Code, courts have applied a two-part test to determine whether a transaction is, indeed, in the ordinary course of business. In the first part of the test, the "vertical dimension" test, the Court analyzes the transaction "from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted" when he initially contracted with the Debtor. *Burlington Northern Railroad Company v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 705 (9th Cir.1988) (citations omitted). In the second part of the analysis, the "horizontal dimension" test, the Court must determine "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *In re Dant & Russell,* 853 F.2d at 704. Under this two-part analysis, "[t]he touchstone of 'ordinariness' is thus the interested parties' reasonable expectations of what transactions the debtor-in-possession is likely to enter in the course of its business." *Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.),* 29 B.R. 391, 394 (S.D.N.Y.1983). Another court has noted that:

> A good case can be made for the proposition that ordinary course includes only those payments of ordinary day-to-day operating expenses that, while necessary, are relatively insignificant; and for which the requirement of prior Court approval on notice and hearing, would unduly burden the Court and the debtor.

*Northern Bank v. Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A. (In re Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A.),* 115 B.R. 185, 188 (Bankr.D.Minn.1990).

---

1. 11 U.S.C. § 1108 provides that "Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business."

■ In the present case, it is clear that the postpetition transfer to KDC fails the vertical dimension test because a hypothetical creditor could not reasonably expect a debtor-in-possession or a Trustee to make a postpetition payment on a prepetition debt to a secured creditor without notice and a hearing. It is obvious that such a payment would expose a hypothetical creditor "to economic risks of a nature different from those he accepted" when he initially contracted with the Debtor. *In re Dant & Russell, Inc.*, 853 F.2d at 705. Absent notice and a hearing, other creditors would have no reasonable way of knowing whether such a payment was being discussed or was being made. Further, without notice and a hearing, creditors are not provided with adequate information upon which to object to such a payment being made. As was noted by the court in *In re Quality Interiors, Inc.*, 127 B.R. 391, 396–97 (Bankr.N.D.Ohio 1991):

> The payment by a debtor-in-possession of prepetition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code, and such transfers are recoverable. 11 U.S.C. § 549. . . . This Court often permits the payment of prepetition wages so that the debtor-in-possession may maintain an effective work force, especially where the amount of the payment is relatively small. . . . But in no event may such payments be made without prior authorization from the bankruptcy court.

*Id.* If a postpetition payment of outstanding prepetition wages even in small amounts requires court approval, it is clear that a postpetition payment by the Debtor in the amount of $17,753.67 to partially satisfy KDC's prepetition obligation would require court approval and fall outside the "ordinary course of business." To find otherwise, would prejudice the position of other creditors by removing their right to object to such a payment being made.

■ It is also clear that the Debtor's postpetition payment to KDC does not satisfy the "horizontal dimension" test. The horizontal dimension test is described as an industry-wide perspective in which the Debtor's business is compared to other like businesses.

*In re Dant & Russell, Inc.*, 853 F.2d at 704. In this comparison, the test is whether the postpetition transaction is one which other similar businesses would engage in as ordinary business. *Id.* This test finds a transaction occurring in the Debtor's ordinary course of business where there is a showing that the transaction is the sort occurring in the day-to-day operations of enterprises akin to the Debtor's. *Committee of Asbestos–Related Litigants and/or Creditors v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 60 B.R. 612, 618 (Bankr.S.D.N.Y. 1986), *rev'd on other grounds*, 801 F.2d 60 (2nd Cir.1986). "[T]his showing is required merely to assure that neither the debtor nor the creditor [did] anything abnormal to gain advantage over other creditors." *Id.*, quoting *In re Economy Milling Co.*, 37 B.R. 914, 922 (D.S.C.1983).

It is obvious that the Debtor's payment in the amount of $17,753.67, which partially satisfied the Debtor's prepetition obligation to KDC, did not occur in the day-to-day operations of the Debtor's business and does not constitute an ordinary course of business transfer under 11 U.S.C. § 363(c)(1). This is the type of payment which is simply not authorized by 11 U.S.C. § 363(c)(1) and is properly recoverable by the Trustee pursuant to 11 U.S.C. § 549 and § 550. This transfer did not involve a payment to KDC of its cash collateral. It cannot be said that the $17,753.67 payment to KDC was insignificant or that the requirement for court approval would be burdensome to the Court or to the Debtor. This is the type of transaction where notice and a hearing are required in order to afford interested parties the right to be heard and object to such a transfer if desired and to protect the parties to the transaction if the transaction is later questioned.

The Court finds persuasive the reasoning of the United States Bankruptcy Court for the District of Minnesota in *In re Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A., supra*, which held that a Debtor's postpetition payments on unexpired prepetition leases were not made in the ordinary course of business, were not authorized by the Bankruptcy Code or the court, and could

be avoided by the Trustee. The court in *Metropolitan* stated that:

Postpetition payment of a prepetition debt is not authorized by 11 U.S.C. § 363(c)(1). The fact that such payment might actually reduce an allowed secured claim, thereby creating or increasing equity in property of the estate, does not legitimize the payment, at least when made from other than the recipient's cash collateral. Unsecured cash, not necessary for postpetition ordinary operating expenses is, absent court order, subject to §§ 507 and 726 priority and distribution provisions. Such cash is not properly available for payment of prepetition debt, secured or unsecured, under 11 U.S.C. § 363(c)(1). To hold otherwise, would allow some claimants to improve their prepetition positions at the expense and prejudice of § 507 and § 726 interests, without notice and hearing.

*In re Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.,* 115 B.R. at 189.

KDC asserts that this transfer falls within the ordinary course of the Debtor's business and is thus exempted from the trustee's avoidance powers under 11 U.S.C. § 549 because a "hypothetical creditor could and should reasonably expect a Debtor involved in the business of strip coal mining to require the use of a dozer in order for it to conduct business.... and the transaction at issue is certainly one in which another company involved in the business of strip coal mining would enter into in the ordinary course of business." *See* KDC's Memorandum in Opposition at p. 4. The issue in this proceeding, however, is not the Debtor's use of KDC's equipment in its coal mining operations but the postpetition payment of $17,753.67 made to KDC without court approval. If such a payment needed to be made to continue using KDC's equipment, notice and a hearing was necessary to provide other creditors the opportunity to object.

▪▪▪ KDC also attempts to characterize the payment it received from the Debtor as adequate protection against its collateral's

depreciation. However, adequate protection payments are not within the Debtor's ordinary course of business. Section 363(e) of the Bankruptcy Code provides, in pertinent part, that:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). Clearly from this statutory language, court authorization is required before adequate protection payments can be made by a Debtor. Furthermore, adequate protection payments are not authorized "until it is requested and approved by the court on notice and hearing." *Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A.,* 115 B.R. at 190. Adequate protection payments made in the ordinary course of business would constitute an anomaly because a Debtor is required to seek court approval before such payments are made, which is entirely inconsistent with the "ordinary course of business." Moreover, unless *ex parte* relief is granted, notice and a hearing normally is required before adequate protection payments can be made by a Debtor in order to provide all interested parties with the opportunity to voice their opinions on the decision to make such payments.[2] For the foregoing reasons, the Court finds that the postpetition payment to KDC, even if characterized as an adequate protection payment, does not qualify as a transaction occurring in the ordinary course of the Debtor's business under 11 U.S.C. § 363(c)(1).

It is undisputed that the postpetition payment received by KDC was not its cash collateral nor was it authorized by the Court. The payment was meant to partially satisfy KDC's secured claim against the Debtor. The nature or the amount of KDC's claim was never determined by this Court prior to this

---

2. Rule 4001 of the Federal Rules of Bankruptcy Procedure provides, in Chapter 11 cases, that a request for adequate protection must be served on the Debtor, the creditor's committee or, if no creditors' committee has been appointed, on the twenty largest unsecured creditors, and on such other entities as the court may direct.

payment. Further, the Court was not asked to, nor did it approve any adequate protection payments to KDC at the time of the transfer. Viewing the evidence in the light most favorable to KDC, the Court finds there are no genuine issues of material fact. For the reasons outlined herein, the Court finds the postpetition payment to KDC in the amount of $17,753.67 was unauthorized and does not fall within the Debtor's ordinary course of business. The transaction is subject to the trustee's avoidance powers under 11 U.S.C. § 549(a)(2)(B) and is entitled to be recovered pursuant to 11 U.S.C. § 550(a).